## Spaulding *v.* Ferguson, Appellant.

*Estoppel—Parol partition—Adverse possession—Statute of limitation—Fee simple.*

Testator devised three fourths of a tract of land to his son, with power of appointment by will to the son's sons, or, upon failure of appointment by will, to the son's sons, excluding daughters. No disposition was made of the remaining one fourth of the tract, and there was no residuary clause. The son took possession of the whole tract and devised it equally to all his children, including daughters. After his death his six children made

a parol partition of the whole tract, and each child went into possession of his or her purpart, and held it openly, continuously and adversely for more than twenty-one years. *Held,* that the daughters, by the estoppel of the sons and by the statute of limitations, had acquired a good marketable title to the purparts allotted to them in the parol partition.

Submitted, Oct. 11, 1893. Appeal, No. 242, Oct. T., 1893, by defendant, John Ferguson, from judgment of C. P. Beaver Co., June T., 1893, No. 315, in favor of plaintiff, George M. Spalding, on trial by court without jury. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and THOMPSON, JJ.

Assumpsit to recover purchase money of land.

The case was tried without a jury. The opinion of the court below was as follows by WICKHAM, P. J. :

"1st. John McDonald, Sr., died in the year 1815, having first made his last will and testament, bearing date April 12, 1814, and since his death duly probated. In and by said will he disposed of certain of his real estate, in words and manner following, viz.: 'Item. I will and leave unto my sons, James and Edward, all the plantations adjoining, together whereon I live at presen, called Highlands, Mount Pleasant, Gooseberry Thicket, Primrose Hill and a piece of land I bought from Col. George Stewart and a small piece of land I bought from John Stewart, during their lives, to be equally divided between them according to quantity and quality. I allow son James the upper part and son Edward the lower part next to Frederick Johnson's; or if they be both agreed, they may cast lots. If James or Edward dies without hairs begot in lawful marriage-bed, the deceased's land is to fall to the living brother and his heirs. . . . My son James may make a will and leave his land to any of his sons that he thinks most worthy, and their hairs forever, with privilege that one hair may purchase of another hair. If son James makes no will, I do hereby will and leave said lands to be equally divided between his sons for the use of them and their hairs forever, with privilege that one hair may purchase of another, if no sons to his daughters, their hairs and assigns forever; but if James should die when his children is small, the whole profits of their land must go to support said children until the youngest comes of age. . . . Item. I will and

leave to Andrew McDonald, my son, three-fourth part of that tract of land whereon he lives, called Cornfield, on the Ohio River, in the same method and way and under the same incumbrance that I have left my son James his lands etc. . . . I have made no provision for my grand-daughters. My sons may make fortunes for their daughters, but as I have hereby given my sons privilege to make wills, they may leave or give part thereof to their daughters by their will or wills, but to be intealed,' etc.

"2d. The tract called Cornfield, in the will aforesaid, contained 337 acres. Andrew McDonald, above named, on his father's death, took and held in severalty, by virtue of the above devise, 215 acres and 96 perches, with allowances of said tract, for which he received in his own name, in fee simple, a patent from the commonwealth of Pennsylvania, dated January 23, 1829. The said 215 acres and 96 perches he held and claimed as his share under his father's will openly, exclusively and without interruption, or adverse claim, until his death in the year 1846.

"3d. Andrew McDonald was unwilling to submit to certain of the limitations and restrictions placed on his estate, by his father's will, and in and by his own last will and testament, dated September 22, 1819, and proved and registered on April 11, 1846, he provided as follows : 'As my father in his last will hath given me liberty, in some measure to make a will respecting the land he has willed to me and my heirs, I will that that part of the tract of land on which I now live, called Cornfield, be divided in the following manner, that is, into as many equal quantities as I have children, including those born and such as are not born. My wife is at present pregnant. The lines which run west from the Ohio river until they strike the west line of the tract and parallel with the division line between the land left to me and my heirs and my brother, William McDonald and his heirs, by my father, John McDonald. My daughter Ann is to have her division of land next to her uncle, William McDonald, off the southern end of my part of the place called Cornfield. John McDonald, my son, is to have his equal division adjoining his sister Ann. James R. McDonald, my son, is to have his equal division of land adjoining his brother John. Andrew McDonald, Jr., my son, is to have his division of land adjoining his brother, James R. McDonald. Thus my eldest

child first, and so of every child according to her or his age. In case any of my children dies without lawful begotten child or children, his or her share reverts back to my children as though he or she had not been born.'

" 4th. Andrew McDonald left to survive him six children, viz.: John R., Andrew, Abram, Ann, afterwards intermarried with Aaron M. Bryan, Martha intermarried with Thomas Christy, and Mary intermarried with Henry Bryan. One of the testator's sons, James R., died in his lifetime, unmarried and without issue. All the others had legal issue.

" The six children above mentioned took, under their said father's will, the land therein devised to them, the same being that part of the Cornfield tract taken by their father under the will of John McDonald, Sr., as set forth in the second finding of fact aforesaid.

" In the year 1846 or 1847 the six devisees employed a surveyor to divide the land, in accordance with their father's last will and testament. He accomplished his work satisfactorily, subdividing the tract into six purparts and making a draft of the same. These purparts the devisees allotted to each other by parol mutual agreement, each devisee taking one. Each purpart was farmed, improved and cultivated by its owner, and he or she and his or her successors in title have held and occupied such purpart, claiming it in fee simple since 1847, severally, openly, notoriously, actually, continuously, exclusively, adversely, uninterruptedly and without dispute until the present time. The validity and binding force of Andrew McDonald's will, and of the said partition and the title in fee simple claimed thereunder, have always been fully recognized by all parties interested. Abram McDonald, one of said devisees, was only about twelve years of age when the said partition was made. His guardian acted for him. When the said Abram reached full age, he retained the purpart alloted to him (making no claim to the rest of the land), and when he was between twenty-seven and twenty-eight years old he conveyed his purpart to one David McDonald. In his deed to the latter he recites, as the foundation of his title, the devise in his father's will and the partition aforesaid. Similar recitals are found in the conveyances made by his codevisees, for their respective purparts, to purchasers thereof.

" 5th. It is conceded for the defence, and is found as a fact, that the lands, the agreement for sale of which has given rise to this action, are a part of the tract partitioned and held as aforesaid by the said devisees of Andrew McDonald, deceased, and that the purparts he holds and claims to own in fee simple and has agreed to sell the defendant, have been acquired by him, by good and valid conveyances, from the said parties to the partition and their successors in title.

" The said devisees did not join in any of the conveyances made by them, but each conveyed his or her purpart separately.

" 6th. By a sufficient agreement in writing made by and between the plaintiff and defendant, and dated March 1, 1893, the said plaintiff covenanted and agreed to convey to said defendant, the said lands, held and claimed by him, the plaintiff, as aforesaid, for the price of $85,000, to be paid by the defendant on May 1, 1893. And the said plaintiff agreed that he would, at his own proper cost and charge, on the payment of said sum of money (which the defendant covenanted to pay as aforesaid), execute and deliver to the defendant 'a good and sufficient deed for the proper conveying and assuring of said premises, in fee simple, from all incumbrance and dower or right of dower, such conveyance to contain the usual covenant of general warranty.' It is conceded and found that a proper conveyance was tendered by the plaintiff to the defendant on May 1, 1893, the time when the purchase money was payable. The whole amount of said purchase money remains unpaid. It is also conceded and found that the said lands agreed to be conveyed are free from dower, right of dower or incumbrance.

" 7th. At the trial the affidavit of defence was treated as the plea, and the defence was limited to the two matters therein alleged, viz.: 1st. That Andrew McDonald, deceased, did not, under the will of his father, John McDonald, Sr., deceased, take all of the tract called ' Cornfield.' 2d. That whatever land and estate he did obtain, under said will, passed to his three sons, by reason of his giving his daughters their shares in fee simple, instead of in fee tail, as required by his father's will.

" 7½. That Andrew McDonald had lived upon the tract of land containing 215 acres and 96 perches, willed to him by his father, from the year 1827, or earlier, up to the time of

his death. That said tract was the severed three fourths, or thereabouts, of the original tract called ' Cornfield,' and that the whole of said tract of 215 acres and 96 perches, and not merely the three fourths part thereof, passed to said Andrew McDonald by the will.

" 8th. In addition to the said ' Cornfield ' tract, the said Andrew McDonald, deceased, in and by his last will and testament aforesaid, devised other real estate and also interests in personalty to said sons, all whereof were by them accepted.

### " CONCLUSIONS OF LAW.

" 1. The said sons of Andrew McDonald, deceased, having fully assented to all the provisions of their father's last will and testament, and accepted and received all the benefits conferred on them thereby, and having also united in the said amicable parol partition, they and all claiming through or under them were and are estopped from denying the titles of their said sisters to the purparts of said partitioned land allotted to their said sisters as aforesaid.

" 2. By virtue of the wills of John McDonald, Sr., deceased, and Andrew McDonald, deceased, together with the said estoppel and the statute of limitations, the said plaintiff has, and had, at the time the agreement was entered into between him and the defendant, a good and marketable title, in fee simple, to the portions of said ' Cornfield ' tract agreed to be sold and conveyed to the defendant.

" 3. The plaintiff is entitled to recover, herein, from the defendant, the sum of eighty-five thousand dollars, purchase money aforesaid, with interest thereon from the first day of May, A. D. 1893."

Exceptions to the opinion were overruled, and judgment entered for plaintiff. Defendant appealed.

*Errors assigned* were not printed in appellant's paper-book.

*John M. Buchanan, Lewis W. Reed* and *William A. McConnell,* for appellant, cited : McDonald v. Dunbar, 20 W. N. 562.

*A. P. Marshall* and *W. H. S. Thomson,* for appellee, filed no paper-book.

PER CURIAM, November 6, 1893:

Appellant has failed to furnish us with a copy of his " assignment of errors." We find however that the errors assigned on our record are a copy of his exceptions, filed to the learned trial judge's conclusions of law, printed on pages 15 and 16 of the paper-book. This may, in the circumstances, be accepted as a copy of his " assignment of errors."

By agreement of parties, this cause was tried by the court below without the intervention of a jury. The findings of fact and conclusions of law are fully set forth in the opinion of the learned president of the common pleas. An examination of the record has failed to disclose any error in his conclusions, and we affirm the judgment on his opinion.